### In re STATES PRINTING CO.

### CENTRAL TRUST CO. OF ILLINOIS v. MERGENTHALER LINOTYPE CO.

### MERGENTHALER LINOTYPE CO. v. CENTRAL TRUST CO. OF ILLINOIS.

(Circuit Court of Appeals, Seventh Circuit.   January 11, 1917.)

Nos. 2362, 2363.

1. BANKRUPTCY ⊂⊃267—SALE BY TRUSTEE—RIGHTS OF MORTGAGEE.
    A mortgagee, who, without objection or demand for the property, permits the mortgaged property to be sold by a trustee in bankruptcy under a court order for less than the secured debt, is limited in his preferred claim to the proceeds of the sale, if he knew of the order for sale.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 371, 380.]

2. BANKRUPTCY ⊂⊃267—SALE BY TRUSTEE—RIGHTS OF MORTGAGEE—VALUE OF PROPERTY.
    Where mortgaged property is sold by the trustee in bankruptcy under orders of the court, preferred claim of the mortgagee is limited to the actual value of the property sold, even though he knew nothing of the bankruptcy or the order for sale.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 371, 380.]

3. BANKRUPTCY ⊂⊃267—SALE BY TRUSTEE—MORTGAGED PROPERTY—ORDER.
    Where the receiver in bankruptcy, authorized to continue the business, secured an order authorizing it to solicit bids for the sale of the assets free and clear of liens, the liens, if any, to attach to the proceeds of the sale, and a notice advised the creditors that, if bids were obtained in accordance with an attached circular and approved, the assets would be sold without further notice, the liens to attach to the proceeds, and the circular stated that the sale would be effected as a going concern, an order for sale, made under the circumstances recited and before determination of the validity of liens contested by the receiver and trustee, reciting that a firm of auctioneers was willing to guarantee to realize a sum net to the estate which exceeded the liens claimed, and directing the receiver to proceed to sell the assets under the guaranty without further notice, should be construed as shifting the lien, if any, of a chattel mortgage on part of the property to the proceeds of the sale of all the assets, not merely to those of the mortgaged assets, since under the order the assets might have been sold as a going concern, and the mortgagee could not, therefore, have bid in the mortgaged assets and protected his lien.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 371, 380.]

Appeal and Cross-Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

---

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In the matter of the States Printing Company, bankrupt. From an order of the District Court, reversing that of the referee and allowing the lien claim of the Mergenthaler Linotype Company in full from the proceeds of the sale of the entire estate, the Central Trust Company of Illinois, trustee in bankruptcy, appeals, and the Mergenthaler Linotype Company cross-appeals. Affirmed.

See, also, 238 Fed. 775, —— C. C. A. ——.

E. C. Tourje, of Chicago, Ill., for appellant.

Arthur B. Wilson and Charles E. Pope, both of Chicago, Ill., for appellee.

Before MACK, ALSCHULER, and EVANS, Circuit Judges.

MACK, Circuit Judge. The determination of this appeal turns on the construction of an order of sale made in bankruptcy proceedings under circumstances hereinafter more fully stated.

[1, 2] Appellant rightly contends that a mortgagee, who stands by and without objection or demand for the mortgaged property knowingly permits a court order sale by a trustee in bankruptcy for less than the amount of the secured debt, will be limited in his preferred claim to the proceeds of the sale. Furthermore, even if a mortgagee knows nothing of the bankruptcy, the sale, or the order, his recovery would be limited to the actual value of the property sold. But, in the instant case, the situation is not so simple; it is, in fact, complicated not only by the trustee's denial, both before, at the time of and after the sale, of the validity of the mortgage lien, but still more by the language of and the circumstances surrounding the entry of the order of sale.

[3] The auction sale was held within three weeks of the adjudication in bankruptcy, under an order entered over two weeks earlier and during a receivership. The property, four linotype machines, was not perishable; the validity of the liens had not been determined; the property covered by the mortgage was not even appraised separately, but only jointly with four other machines; the secured indebtedness, if the mortgage was valid, was in excess of the minimum legal sale price, when not approved by the court, three-fourths of the appraised value, if it be assumed that one-half of the appraised value is attributable to each set of four machines; thus it was clear that there might have been no equity for the estate. Under these circumstances, the mortgagee might well have sought a separate appraisement of the mortgaged property, a delay in the sale of this property until the question of validity of the lien had been determined, and, if this were favorable to it, a relinquishment of the trustee's possession. Its failure so to act, after full knowledge of the facts, would ordinarily preclude it from now objecting to the sale or to the recovery of more than the amount actually realized for the property in question. If, however, the order of sale, either in express words or inferentially, in view of all the surrounding circumstances, should be construed as shifting the lien, if any, on the entire proceeds of the sale of all the assets, then the mortgagee would be entitled to payment in full of its secured debt. And, in our judgment, this is the fair construction of the order.

The receiver appointed on the filing of the petition in bankruptcy and authorized to continue the business, within three days thereafter, secured an order of the court which, as stated in a later notice to creditors, authorized it to solicit bids for the sale of the assets of the estate, free and clear of liens, the liens, if any, to attach to the proceeds of any sale. The notice further advised the creditors that the matter would come on for hearing on a certain day, at which, if bids were obtained in accordance with an attached circular, and approved, the assets would be sold without further notice; the liens, if any, to attach to the proceeds. The circular attached was a solicitation of bids. It enumerated the assets, including good will, and stated that the receiver was continuing the business and that "the sale will be effected as a going concern."

When the matter came on for hearing the court inquired and was advised that the liens aggregated some $30,000. The receiver had reported a guaranteed bid of $38,000 from a firm of auctioneers. Thereupon the order for the sale was entered. After reciting that a certain firm of auctioneers "are willing to guarantee to realize the sum of $38,000 net to the estate, if permitted to sell said assets at public auction, and it further appearing that said offer is the highest and best made," the order directed the receiver to proceed "to sell said assets at public auction under said guaranty without further notice to creditors."

While this order, accepting in this manner the guaranteed bid, was not a present sale of the property to the auctioneers for $38,000, it was an acceptance of the guaranty that the auction, which they were thereby authorized to conduct, would bring at least this amount into the estate. The method of conducting the public auction sale was then discretionary with the auctioneers. They could lawfully have sold in bulk, if in their honest judgment, or after a sale by lots had been attempted, a larger sum would thereby be realized. The court, with full knowledge that the claimed liens would not exhaust the guaranteed proceeds, and without objection by the lienholders, thus authorized a sale which could have been so conducted as to make it impossible to ascertain the proceeds of any specific mortgaged property, to which the lien could attach. As the order of sale is but in furtherance of the earlier order directing the solicitation of bids for the property, free and clear of liens, the latter to attach to the proceeds, the two must be construed together. Concededly, the liens are not entirely lost by the failure of the mortgagees to file petitions before the sale, demanding possession. If, then, the liens are preserved, and if the order is to be construed as preserving them, it can fairly be construed only as shifting all of them to the entire proceeds, guaranteed at not less than $38,000. The alternative is that if, in the judgment of the auctioneer, a sale by lots should be made, the lien would attach to the proceeds of the mortgaged property thus sold, with perhaps an addition of some part or proportion of the money to be paid under the guaranty, should the entire sales proceeds be less than $38,000; if, on the other hand, the auctioneer should sell the business as a whole, then, while the lien is to attach to the entire proceeds or to the entire

$38,000, it must be limited to the value of the mortgaged property, and this value is to be ascertained by the court only after the goods themselves will have been sold and disposed of.

The order must be construed as of its date; the fact that the auctioneer subsequently determined to sell in single lots instead of as a going concern is immaterial. It would be manifestly unjust to subject the mortgagees to this possibility of a bulk sale and thus to deprive them of the opportunity of protecting themselves by bidding in the property in which they were interested, without protecti.ig them, should their liens be established. The alternative construction of the order, necessitating proof of actual value after the property shall have been disposed of, gives no such protection.

The receiver's activities brought about this very early sale and this method of conducting it. The trustee, appointed the day before the auction sale, subsequently ratified the receiver's acts. The mortgagees cannot be charged with fault or negligence in acquiescing therein. They relied upon, and, in our judgment, were justified in relying upon, the orders as giving them full protection, if they subsequently established their liens.

The order of the District Court, reversing that of the referee, and allowing the concededly valid lien claim in full to be paid out of the proceeds of the entire estate, must therefore be affirmed.